UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LINDA MCKINNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:18-CV-00335-RLY-TAB |
| | ) |
| SUPER BOWL PHO LLC | ) |
| and LEO NGUYEN | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM AND SUBMISSION OF EVIDENCE IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

Plaintiff, Linda McKinney ("McKinney" or "Plaintiff"), by counsel, moves the Court for a judgment by default against Defendants Super Bowl Pho LLC ("Super Bowl Pho") and Leo Nguyen ("Nguyen"). In support of Plaintiff's Motion for Default Judgment and in advance of the damages hearing, the Plaintiff states as follows:

1. This matter is currently set for a hearing on Plaintiff's Motion for Default Judgment scheduled for August 14, 2019 at 2:00 p.m. [Docket No. 15]

2. Plaintiff filed his original Complaint on June 20, 2018 alleging violations of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. ("FLSA") and the Indiana Wage Payment Statute, I.C. § 22-2-5 *et seq*. [Docket No. 1]

3. Defendants were served with copies of the original Complaint and respective Summons on February 8, 2018. [Docket Nos. 5 and 6]  On February 27, 2018, Plaintiff timely filed her Amended Complaint and served Defendants with the Amended Complaint on that same day via regular mail, making their response to Plaintiff's Amended Complaint due on or before March 16, 2018. [See Docket No. 7 and

Fed. R. Civ. P. 15(a)]   As of the date of this filing, neither Defendant has filed a responsive pleading to Plaintiff's original Complaint or Amended Complaint.

    4.     On August 16, 2018, the Default of Defendants was entered pursuant to Fed. R. Civ. P. 55(a). [Docket Entry No. 13]

    5.     Defendants, by virtue of their default, have admitted the allegations set forth in Plaintiff's Amended Complaint. "A default judgment establishes, as a matter of law, that a defendant is liable to the plaintiff for each cause of action in the complaint. When a court determines that a defendant is in default, all well pleaded allegations in the complaint will be taken as true." *National Collegiate Athletic Association v. Kizzang LLC*, 304 F.Supp.3d 800, 805 (S.D. Ind. January 18, 2018) (internal citations and quotations omitted)

    6.     "An employee who brings suit pursuant to the FLSA has the burden of proving that he performed worked for which he was not properly compensated." *Melton v. Tippecanoe County*, 838 F.3d 814, 818 (7th Cir. 2016) (internal citations and quotations omitted) As evidence in support of her Motion for Default Judgment and her damages, Plaintiff has submitted the Declaration of Plaintiff Linda McKinney [McKinney Decl., Exhibit A] and the Declaration of Attorney Robert J. Hunt [Hunt Decl., Exhibit B].

    7.     McKinney is an individual who resides in Hamilton County, Indiana.  She was employed by Defendants within the meaning of the FLSA during the three-year period prior to the filing of this Complaint.  McKinney was an individual employee within the meaning of the FLSA, 29 U.S.C. § 203(e)(1). [Dkt. No. 7, Amended Complaint, ¶ 2]

    8.     Super Bowl Pho is an Indiana domestic limited liability company that owns and operates a restaurant located in Westfield, Indiana.  Super Bowl Pho acted, directly

or indirectly, in the interest of an employer with respect to McKinney.  Super Bowl Pho is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d). [Dkt. No. 7, Amended Complaint, ¶ 3]

9. Nguyen is an owner, member, and/or officer of Super Bowl Pho.  In this capacity, Nguyen is involved in the day-to-day business operations of Super Bowl Pho.  Nguyen exercised operational control over Super Bowl Pho and controlled significant business functions of Super Bowl Pho.  At all relevant times, Nguyen acted and had the responsibility to act on behalf of, and in the interests of Super Bowl Pho in devising, directing, implementing, and supervising the wage and hour practices and policies challenged in this Complaint.  Nguyen is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d). [Dkt. No. 7, Amended Complaint, ¶ 4]

10. At all times hereinafter mentioned, McKinney was engaged in interstate commerce as defined by the FLSA, 29 U.S.C. § 207. [Dkt. No. 7, Amended Complaint, ¶ 7]

11. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r). [Dkt. No. 7, Amended Complaint, ¶ 8]

12. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had

and has an annual gross volume of sales made or business done of not less than $500,000. [Dkt. No. 7, Amended Complaint, ¶ 9]

13. Defendants own and operate a restaurant in Westfield, Hamilton County, Indiana known as Super Bowl Pho. [Dkt. No. 7, Amended Complaint, ¶ 10; Ex. A, McKinney Decl., ¶ 2]

14. For the entirety of her employment, McKinney has worked for Defendants as a server. [Dkt. No. 7, Amended Complaint, ¶ 11; Ex. A, McKinney Decl., ¶ 3]

15. Defendants employed McKinney off-and-on during the three-year period prior to the filing of her original Complaint. In approximately November 2017, Defendants hired McKinney back and she continued her work as a server. [Dkt. No. 7, Amended Complaint, ¶ 12; Ex. A, McKinney Decl., ¶ 4]

16. When McKinney was hired back in approximately November 2017, Defendants began paying McKinney a salary of $400.00 per week. Defendants paid McKinney this salary bi-weekly. Defendants promised McKinney that after her first two months, Defendants would begin paying McKinney a salary of $450.00 per week. [Dkt. No. 7, Complaint, ¶ 13] [Dkt. No. 7, Amended Complaint, ¶ 13; Ex. A, McKinney Decl., ¶ 5]

17. Since being hired back by Defendants in approximately November 2017, McKinney worked a set work schedule each week that totals fifty-five (55) hours worked by McKinney per week. [Dkt. No. 7, Amended Complaint, ¶ 14; Ex. A, McKinney Decl., ¶ 6]

18. McKinney was not exempt from the overtime provisions of the FLSA. [Dkt. No. 7, Amended Complaint, ¶ 15]

19. McKinney regularly worked in excess of forty (40) hours per week ("overtime hours"), but was not compensated for all overtime hours at the rate required by the FLSA. Specifically, Defendants have paid McKinney the same salary each week with no overtime premium for her fifteen (15) overtime hours worked each week. [Dkt. No. 7, Complaint, ¶ 16; Ex. A, McKinney Decl., ¶ 7]

20. Defendants knew that McKinney regularly worked overtime hours. [Dkt. No. 7, Amended Complaint, ¶ 17; Ex. A, McKinney Decl., ¶ 8]

21. Defendants' conduct in not paying McKinney overtime compensation at the rate required under the FLSA was willful and in bad faith. [Dkt. No. 7, Complaint, ¶ 18]

22. On February 5, 2018, McKinney initiated the instant lawsuit by filing her original Complaint against Defendants. [Dkt. No. 1]

23. On February 8, 2018 at approximately 11:27 a.m. and via certified mail, Nguyen received service of the summons and a copy of the original Complaint at his restaurant. [Dkt. No. 7, Amended Complaint, ¶ 19; Ex. A, McKinney Decl., ¶ 9]

24. Nguyen first learned of this action when he received service of the summons and original Complaint on February 8, 2018. [Dkt. No. 7, Amended Complaint, ¶ 20; Ex. A, McKinney Decl., ¶ 10]

25. McKinney was working in the restaurant on February 8, 2018 when Nguyen received service of the summons and original Complaint. [Dkt. No. 7, Amended Complaint, ¶ 21; Ex. A, McKinney Decl., ¶ 11]

26. Immediately upon receipt of the original Complaint on February 8, 2018, Nguyen opened and reviewed the original Complaint McKinney had filed under the

FLSA for unpaid overtime wages. [Dkt. No. 7, Amended Complaint, ¶ 22; Ex. A, McKinney Decl., ¶ 12]

27.    Immediately after Nguyen reviewed the original Complaint, he walked directly over to McKinney and asked, "You're suing me?". McKinney responded by saying, "yes." In response, Nguyen told McKinney that she was "stupid" for filing this action, told McKinney her employment was terminated and demanded that McKinney turn over her keys to the restaurant. McKinney left Defendants' restaurant. [Dkt. No. 7, Amended Complaint, ¶ 23; Ex. A, McKinney Decl., ¶ 13]

28.    Less than five minutes after Nguyen received and read a copy of the summons and original Complaint in this FLSA action, Nguyen terminated McKinney's employment. [Dkt. No. 7, Amended Complaint, ¶ 24; Ex. A, McKinney Decl., ¶ 14]

29.    Defendants terminated McKinney's employment because she filed the instant lawsuit. [Dkt. No. 7, Amended Complaint, ¶ 25; Ex. A, McKinney Decl., ¶ 15]

30.    On February 8, 2018, Defendants retaliated against McKinney by terminating her employment. [Dkt. No. 7, Amended Complaint, ¶ 26; Ex. A, McKinney Decl., ¶ 16]

31.    McKinney has suffered damages as a result of Defendants' unlawful retaliation. Specifically, McKinney was out of work for a total of 4 weeks following her termination by Defendants and therefore lost wages totaling $1,800.00 (4 weeks x $450.00 per week). [Ex. A, McKinney Decl., ¶ 17]

32.    Defendants have violated and are violating the provisions of 29 U.S.C. § 207 by failing to comply overtime requirements of the FLSA. Specifically, Defendants have failed to pay McKinney one and one-half times his regular rate of pay for all hours

worked in excess of forty (40) in a single workweek. [Dkt. No. 1, Amended Complaint, ¶ 26]

33. Defendants have failed to plead or otherwise defend against Plaintiff's claims, and Plaintiff is entitled to entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b).

## Argument

34. Under the FLSA, an "employer" is defined at 29 U.S.C. § 203(d): "Employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee." Thus, an individual can be considered an "employer" under the FLSA. *Riordan v. Kempiners,* 831 F.2d 690, 694 (7th Cir.1987); *Dole v. Simpson,* 784 F.Supp. 538, 545 (S.D.Ind.1991) ("A host of decisions from federal courts of all levels make clear that individuals ... may be personally liable for FLSA violations.").

35. In *Irizarry v. Catsimatidis*, 722 F.3d 99 (2d. Cir. 2013), the court explained the statutory background and principles underlying the FLSA's definition of "employer:"

> The Supreme Court has recognized "that broad coverage [under the FLSA] is essential to accomplish the [statute's] goal of outlawing from interstate commerce goods produced under conditions that fall below minimum standards of decency." *Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 296, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985). Accordingly, the Court "has consistently construed the Act liberally to apply to the furthest reaches consistent with congressional direction." *Id.* (quotation marks omitted). "The common law agency test was found too restrictive to encompass the broader definition of the employment relationship contained in the [FLSA]." *Frankel v. Bally, Inc.,* 987 F.2d 86, 89 (2d Cir.1993). Instead, the statute "defines the verb 'employ' expansively to mean 'suffer or permit to work.' " *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (quoting 29 U.S.C. § 203(g)). Unfortunately, however, the statute's definition of "employer" relies on the very word it seeks to define: " 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The statute nowhere defines "employer" in the first instance.

> The Supreme Court noted early on that the FLSA contains "no definition that solves problems as to the limits of the employer-employee relationship under the Act." *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 728, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). The Court has also observed "that the 'striking breadth' of the FLSA's definition of 'employ' 'stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles' in order to effectuate the remedial purposes of the act.' " *Barfield,* 537 F.3d at 141 (quoting *Darden,* 503 U.S. at 326, 112 S.Ct. 1344) (internal citation omitted).
>
> Accordingly, the Court has instructed that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.' " *Id.* (quoting *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961)). The "economic reality" test applies equally to whether workers are employees and to whether managers or owners are employers. *See Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir.1999)."
>
> *Irizarry*, 722 F.3d at 103–04.

36. Here, McKinney has asserted sufficient facts for the Court to find that Nguyen, in his individual capacity, was McKinney's employer. [Dkt. No. 7, Complaint, ¶ 3 – 4 ]

37. Pursuant to 29 C.F.R. § 778.113(a):

Weekly Salary. If the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate. If an employee is hired at a salary of $350 and if it is understood that this salary is compensation for a regular workweek of 35 hours, the employee's regular rate of pay is $350 divided by 35 hours, or $10 an hour, and when the employee works overtime the employee is entitled to receive $10 for each of the first 40 hours and $15 (one and one-half times $10) for each hour thereafter. If an employee is hired at a salary of $375 for a 40–hour week the regular rate is $9.38 an hour.

29 C.F.R. § 778.113

38. Here, McKinney worked a set schedule of 55 hours per week. For approximately two months, McKinney was paid a salary of $400.00 per week. Therefore, pursuant to 29 C.F.R. § 778.113(a), McKinney's regular rate for that two month period was $7.27 per hour. McKinney is owed an additional $3.64 per overtime hour worked. Accordingly, McKinney is owed $436.80 in unpaid overtime wages for this first two month period from approximately November 2017 to January 2018 (15 overtime hours x $3.64 half-time rate x 8 weeks).

39. From approximately January 2018 to February 8, 2018, McKinney was paid a salary of $450.00 per week. Therefore, pursuant to 29 C.F.R. § 778.113(a), McKinney's regular rate for that approximate 3 week period is $8.18 per hour. McKinney is owed an additional $4.09 per overtime hour worked.  Accordingly, McKinney is owed $184.05 in unpaid overtime for this approximate three week period (15 overtime hours x $4.09 half-time rate x 3 weeks).

40. As a result, McKinney is owed a total of $620.85 in unpaid overtime wages ($436.85 + 184.05).

41. The FLSA provides for liquidated damages in an amount equal to unpaid overtime wages. 29 U.S.C. § 216(b). Payment of liquidated damages is mandatory, unless the employer demonstrates a reasonable belief that its actions were not in violation of the FLSA. 29 U.S.C. § 260. Here, McKinney should be awarded liquidated damages because Defendants have not made any showing to avoid an award of liquidated damages. Accordingly, in addition to the $620.85 in unpaid overtime wages, McKinney is entitled to an additional $620.85 as liquidated damages.

37. "The FLSA forbids retaliation." *Travis v. Gary Community Mental Health*

*Center, Inc.*, 921 F.2d 108, 109 (7th Cir. 1990).

38.     The FLSA's anti-retaliation provision provides that it is unlawful:

> [T]o discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about *1003 to testify in any such proceeding, or has served or is about to serve on an industry committee. 29 U.S.C. § 215(a)(3).

*Lambert v. Ackerley,* 180 F.3d 997, 1002–03 (9th Cir. 1999)

38.     "The FLSA's anti-retaliation clause is designed to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act." *Id.* at 1004 (9th Cir. 1999)

39.     Here, Defendants discharged McKinney in retaliation for her bringing a claim under the FLSA for her unpaid overtime wages.  McKinney was out of work for approximately 4 weeks and therefore lost wages of $1,800.00 ($450 salary per week x 4 weeks) as a result of her wrongful termination.  McKinney is also entitled to an additional $1,800.00 as liquidated damages for Defendants' violation of the law. *See Poff v. Quick Pick, LLC*, 2017 WL 1509313, at *2 (S.D. Ind. Apr. 27, 2017):

> Quick Pick violated the FLSA by terminating Poff's employment because he filed this lawsuit. 29 U.S.C. 215(a)(3). For this violation, Quick Pick is liable to Poff for the payment of wages lost in the amount of $7,500.00 and an additional equal amount as liquidated damages, for a total of $15,000.00 in damages for retaliatory discharge under the FLSA."

40.     Accordingly, McKinney is owed $3,600.00 in damages for retaliatory discharge under the FLSA.

41.     Defendants' refusal to participate in this lawsuit has denied McKinney the use of discoverable information and documents that would serve as evidence of her claims and damages. The FLSA requires employers to make, keep, and preserve

records of the individuals they employ and their wages, hours, and other conditions of employment. 29 U.S.C. § 211(c). According to the United States Supreme Court case of *Anderson v. Mt. Clemens Pottery Company*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946):

.... An employee who brings suit under ... the Act for unpaid minimum wages or overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. The remedial nature of this statute and the great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee. Due regard must be given to the fact that it is the employer who has the duty under § 11(c) of the Act to keep proper records of wages, hours and other conditions and practices of employment and who is in position to know and to produce the most probative facts concerning the nature and amount of work performed.

\* \* \* \* \*

When the employer has kept proper and accurate records the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of the uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative [sic] the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."

Id., 328 U.S. at 686-88, 66 S.Ct. 1187.

42. Accordingly, as a result of Defendants' refusal to participate in this lawsuit and the resulting absence of discovery, McKinney, by way of her declaration,

provides a calculation of her damages.

43.     The FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The purpose behind the nondiscretionary fee-shifting provision of the FLSA is to encourage attorneys to accept wage cases on behalf of low-wage workers where the attorneys' fees may exceed any possible recovery. *Urnikis-Negro v. Am. Family Prop. Servs., Inc.*, 2009 WL 212122 at *4 (N.D.Ill. January 26, 2009).

44.     In determining the amount of reasonable attorneys' fees, the Court should examine the number of hours expended by McKinney's counsel multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983*); Eddleman v. Swichcraft, Inc.,* 927 F.2d 316, 318 (7th Cir. 1991) (citing *Blanchard v. Berferong*, 489 U.S. 87, 93 (1989). The product of these figures yields a reasonably objective estimate of the value of plaintiffs' counsel's services, known as the "lodestar." *Hensley*, 461 U.S. at 433. This reasonably objective estimate may then be adjusted at the discretion of the district court*. Id.* at 434. In doing so, the court must measure the lodestar against several factors, the most important of which is the results obtained by Speedy's counsel. *Id*. "In calculating the lodestar, the Court 'need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Reynolds v. EOS CCA*, 2016 WL 6876575 at *2 (S.D. IN, Nov. 22, 2016) quoting *Fox v. Vice*, 131 S.Ct. 2205, 2216 (2011).

45.     Attached hereto as Exhibit B is the Declaration of Robert J. Hunt, counsel

for McKinney, which sets forth the basis for McKinney's request for attorney's fees and costs. McKinney requests a total of $6,522.50 in attorney's fees and costs. [Exhibit B, Declaration of Robert J. Hunt]

  46. Accordingly, McKinney requests the Court enter Judgment in her favor and against Defendants in the total amount of $11,364.20, calculated as follows:

   a. $620.85 in unpaid overtime wages pursuant to the FLSA 29 U.S.C. § 216(b);

   b. $620.85 in liquidated damages pursuant to FLSA 29 U.S.C. § 216(b);

   c. $1,800.00 in lost wages for Defendants' violation of 29 U.S.C. 215(a)(3);

   d. $1,800.00 in liquidated damages for Defendants' violation of 29 U.S.C. 215(a)(3);

   e. $6,522.50 in attorney's fees and costs pursuant to FLSA 29 U.S.C. § 216(b).

      Respectfully Submitted,

      *s/ Robert J. Hunt*
      Robert J. Hunt (#30686-49)
      Robert F. Hunt (#7889-84)
      The Law Office of Robert J. Hunt, LLC
      1905 South New Market Street, Suite 220
      Carmel, IN  46032
      E-Mail: rob@indianawagelaw.com
         rfh@indianawagelaw.com

      Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served this 13th day of August, 2019, by depositing a copy of the same in the United States mail, first class postage prepaid, and properly addressed to the following Defendants:

Super Bowl Pho LLC
c/o Registered Agent Leo Nguyen
112 E Main Street
Westfield, IN 4607

Leo Nguyen
112 E Main Street
Westfield, IN 46074

    /s/Robert J. Hunt
    Robert J. Hunt